UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROY LYONS,

                    Petitioner,                    Case Number: 2:10-cv-11386

v.                                         HON. VICTORIA A. ROBERTS

BLAINE LAFLER,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner Leroy Lyons filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is serving two life sentences and is incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. He challenges his convictions for two counts of first-degree premeditated murder.

The Court denies the petition.

I.      **Facts**

Leroy Lyons (Lyons) and his brother, Preston Lyons, were convicted of first-degree premeditated murder in the deaths of Christopher Clark and Antoinette Bates. Antoinette was Lyons' and Preston's niece.[1] The prosecution presented evidence that Lyons was a drug dealer and his brother worked for him as an "enforcer." It was the

_____

[1] Many of the individuals involved share the same surname. Therefore, where necessary for clarity, the Court will refer to individuals by their first names. The petitioner will be referred to as "Lyons" throughout.

prosecution's theory that Clark and Bates were killed in retaliation for stealing Lyons'

drug money.  Clark's body was found in the trunk of Lyons' father's burning car (a

yellow Ford) on November 26, 1987.  Antoinette has not been seen since the date of

Clark's murder.  An assistant Wayne County medical examiner testified that there were

three causes of death: multiple gunshot wounds, soot and smoke inhalation, and multiple

blunt force injuries, consistent with being hit with a bat or a similar blunt object.

Cynthia Bates, Antoinette's sister, testified that a couple of days before

Thanksgiving in 1987, Lyons informed her that someone had stolen his money which he

kept in his mother's bedroom closet, and asked if she knew who had done so.  Lyons said

that when he found the thief he would pluck out their body parts, cut off their fingers, and

kill them.  On the day before Thanksgiving, Cynthia visited Antoinette's house at 8152

Dobel Street.  She noticed that Antoinette had many new things in her house including

new clothes, shoes, and a VCR.  That was the last time she saw Antoinette.  The next day,

she, her mother (Venus Bates), and her aunt (Quinester) went to Connecticut for a

wedding.  When Cynthia returned to Michigan, Lyons told her that Clark had been killed

because he had stolen a drug dealer's money and that he had sent Antoinette away and

she would never be heard from again.  Cynthia testified that she waited several years to

contact police regarding Antoinette's disappearance because she was fearful.

Katherine Ann Sanders testified that, in 1987, she, her sister Wonzie Sanders, and

her boyfriend Curtis Tinker lived on Dobel Street across from Antoinette and Clark's

home.  In November 1987, Antoinette asked Katherine to hold several hundred dollars in

2

$20 bills.  In the days after that, Katherine saw Antoinette with many new clothes and uncharacteristically large sums of cash.  Katherine testified that, on Thanksgiving, Antoinette reported that someone had broken into her home and stolen many of her new things, including a televison and VCR.  A little while later, Antoinette's uncles drove up to Antoinette's house in two separate cars.  Preston drove a yellow Ford.  He carried a baseball bat in his hands.  Clark knocked on Katherine's door and asked her to hold $900 for him.  He seemed nervous and frequently looked out the window.  A short time later, after a conversation with Antoinette's aunt, Katherine walked across the street to Antoinette's home and gave the money to Lyons.  Katherine and her boyfriend then drove to a house on a neighboring street. While there, she heard gunshots coming from the direction of Dobel.  She never saw Clark or Antoinette again.

Venus Bates, Antoinette's mother, testified that on November 25, 1987, she and Lyons visited Antoinette's house.  Preston arrived a short while later, carrying a baseball bat.  Preston and Lyons took Clark to the home's basement.  Venus heard Chris denying that he had taken anyone's money.  She testified it sounded like Clark was being hit.  At one point, Lyons came upstairs and questioned Antoinette, who denied taking his money. Preston left the home and then returned, parking his car in the driveway.  Venus saw Lyons lead Clark out of the home and then heard Clark pleading, "Don't put me in there. Don't do it, man."  She then heard gunshots.  She and her relatives left town the following day to attend a wedding in Connecticut.  Venus testified that when she returned Lyons told her that he had put Antoinette on a plane and she would never have any contact with

3

her family.  Venus never saw her daughter again.  Several years later, she asked Lyons about Antoinette.  Later that evening, Venus's son Charles was beaten up by Lyons.  She perceived that as a warning that she should not inquire further about Antoinette.

David Pary testified that, on November 25, 1987, he was at a house on Tumey Street from which he, and several others, including Preston Lyons, sold drugs.  All of them worked for Lyons.  On that date, Preston brought Christopher Clark to the home and led him to the basement.  He heard Preston and Clark arguing.  A short time later, he heard gunshots.  Preston then came up from the basement and asked Preston and another man to hold open the doors.  Preston carried Clark's body up the stairs.  Preston said he had to kill Clark because Clark had turned his niece against the family.  Preston gave Pary the gun, which Lyons retrieved later that night.

Lyons did not testify in his own defense.

## II.    **Procedural History**

Lyons was convicted by a jury in Wayne County Circuit Court of two counts of first-degree murder.  On June 8, 1999, he was sentenced to two concurrent life sentences.

Lyons filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

> I.    Defendant was denied a fair trial and due process of law under the state and federal constitutions where the prosecutor engaged in a persistent and pervasive effort to prejudice defendant in the eyes of the jury, portraying him as a bad man with a prior criminal history as a way of compensating for a weak circumstantial case.

> II.    Defendant was denied due process of law and his conviction for first-degree

4

murder should be vacated where the jury was charged on a theory that defendant was an aider and abettor and the evidence was insufficient to establish beyond a reasonable doubt that he actually shared the principal, Preston Lyon's, intent or conduct with respect to the murder of Christopher Clark and the prosecution failed to establish the homicide as to Antoinette Bates or any participation by defendant.

III.    The trial court failed to protect defendant's right to a fair trial and committed reversible error by permitting defendant to appear in jail clothing, allowing the introduction of unfairly prejudicial evidence, denying a motion for mistrial and denying valid requests for cautionary instructions.

IV.    Defendant's right to a fair trial was destroyed by the cumulative effect of all these errors.

The Michigan Court of Appeals affirmed Lyons' convictions. *People v. Lyons*, No. 222430, 2001 WL 699976 (Mich. Ct. App. March 27, 2001).  After the Michigan Court of Appeals issued its opinion, Lyons filed a motion for reconsideration, motion for remand and motion to submit a supplemental brief.  The supplemental brief raised these claims:

I.    The trial judge disparaged defendant as a "jerk" and an "idiot" who was "getting on my nerves."  The judge's repeated disparagements reflected bias that denied a fair trial in a fair tribunal.

II.    The trial court erroneously denied defendant's Fourteenth Amendment right to due process and his Sixth Amendment right to counsel by denying substitution of counsel.

III.    Defendant was denied due process of law when his case was transferred to the trial court in apparent violation of the court rules prohibiting judge shopping.

IV.    The trial court's erroneous instruction that a reasonable doubt was one for which jurors "must assign a reason" was structural error requiring automatic reversal.

5

V.      Ineffective assistance of counsel denied defendant a fair trial, where counsel failed to move for a cautionary instruction on highly prejudicial other-acts evidence of drug-dealing.

VI.     The legislature has no power to prescribe a "determinate sentence."

The Michigan Court of Appeals denied the motions for rehearing, to file a supplemental brief and to remand. *People v. Lyons*, No. 222430 (Mich. Ct. App. May 17, 2001).

Lyons filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised through counsel in the Michigan Court of Appeals and the following two claims:

I.      Defendant was denied his state and federal constitutional rights to effective assistance of counsel at every critical stage where counsel refused to act as state's adversary.

II.     Defendant was denied due process and equal protection of law when the Court of Appeals erred reversibly by violating its own special rules and effectively denied defendant counsel at a critical stage and meaningful direct appeal.

The Michigan Supreme Court denied leave to appeal. *People v. Lyons*, 465 Mich. 934 (Mich. 2001).

In February 2006, Lyons filed a habeas action in this court. *See Lyons v. Palmer*, No. 2:06-cv-10728. The petition was dismissed without prejudice for non-exhaustion of state court remedies. *See* 3/1/06 Opinion and Order Summarily Dismissing Petition for Writ of Habeas Corpus Without Prejudice [dkt. # 5].

Lyons filed a motion for relief from judgment in the trial court. He raised this

6

claim:

    I.    Defendant, Leroy Lyons, was denied due process and equal protection of the law when the state engineered defendant's conviction through a fraud on the court and access to the court through malfeasance.

The trial court denied the motion and a request for reconsideration.

Lyons filed a delayed application for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Lyons*, No. 293161 (Mich. Ct. App. Nov. 23, 2009); *People v. Lyons*, 485 Mich. 1105 (Mich. 2010).

Lyons then filed the pending habeas petition. He raises these claims:

    I.    [P]rosecutor engaged in a persistent and pervasive effort to prejudice defendant in the eyes of the jury, portraying him as a bad man with a prior criminal history as a way of compensating for a weak circumstantial case.

    II.    Lyons was denied due process of law . . . where the jury was charged on a theory that defendant was an aider and abettor and the evidence was insufficient to establish beyond a reasonable doubt that he actually shared the principal, Preston Lyons' intent or conduct with respect to the murder of Christopher Clark and the prosecutor failed to establish a homicide as to Antoinette Bates or any participation by defendant.

    III.    The trial court failed to protect defendant Leroy Lyons' right to a fair trial and committed reversible error by permitting defendant to appear in jail clothing, allowing the introduction of unfairly prejudicial evidence, denying a motion for mistrial and denying valid request for cautionary instructions.

    IV.    The trial judge disparaged defendant as a "jerk" and "idiot" who is "getting on my nerves." The judge's repeated disparagement reflected bias that denied a fair trial in a fair tribunal.

    V.    The trial court erroneously denied defendant's Fourteenth Amendment right to due process and his Sixth Amendment right to counsel by denying substitution of counsel.

7

VI.     Defendant was denied due process of law when his case was transferred to
        the trial court in apparent violation of the court rules prohibiting judge-
        shopping.

VII.    The trial court's erroneous instruction that a reasonable doubt was one for
        which jurors "must assign a reason" was structural error requiring automatic
        reversal.

VIII.   Ineffective assistance of counsel denied defendant a fair trial where counsel
        failed to move for a cautionary instruction on highly prejudicial other-acts
        evidence of drug-dealing.

IX.     The legislature has no power to prescribe a "determinate sentence."  A
        sentence which effectively precludes the possibility of parole is a
        determinate sentence.  Defendant's mandatory life sentence is a
        "determinate sentence" which the legislature has no power to prescribe.

X.      Lyons was denied counsel at a critical stage of the proceedings and was
        denied a meaningful direct appeal.

XI.     Lyons was denied his right to effective assistance of counsel at every
        critical stage, when counsel refused to act as the State's adversary.

XII.    The State engineered defendant's conviction through a fraud on the court
        and access to the court through malfeasance.

III.    **Petitioner's Motions**

Pending before the Court are four motions filed by Petitioner. First, Lyons filed a "Motion to Modify Court's Order of August 17, 2011." The Court's August 17, 2011 Order directed Respondent to file portions of the state court record not included in Respondent's initial filing of Rule 5 materials. Lyons asks the Court to expand that Order to require Respondent to include additional portions of the state court record related to a *pro se* interlocutory appeal. Respondent's supplemental Rule 5 materials include the state court record related to Lyons' interlocutory appeal. Therefore, this motion will be denied as moot.

Second, Lyons filed a "Motion for Leave to Make a Brief Statement Based on State's Filings." He seeks to supplement his petition with further arguments related to his habeas claims. The Court will grant the motion.

Third, is a "Motion for State to Disclose Its Filings of August 31, 2011." Lyons moves to compel Respondent to provide him with copies of the Rule 5 materials filed in this case. Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part: "The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished." An indigent petitioner does not have a right to free transcripts in order to search for error. *Bentley v. United States*, 431 F.2d 250, 254 (6th Cir. 1970). Lyons has submitted a detailed petition and supporting brief, including

9

portions of the state court record, and eighteen motions in this Court. Lyons has not demonstrated that he requires access to the Rule 5 materials to fairly and completely present his habeas claims. Therefore, the Court will deny the motion.

Finally, Lyons filed a "Motion to Supplement," in which he moves to expand the record to include two news articles. The first is an article from the Criminal Defense Newsletter regarding shackling of defendants during trial; the second a newspaper article about Wayne County Circuit Court Judge Leonard Townsend, the judge who presided over Lyons' trial. Rule 7, Rules Governing Section 2254 Cases, allows for expansion of the record in habeas corpus proceedings at the judge's discretion by inclusion of additional relevant materials. The Court finds these news articles irrelevant to a fair determination of the petition's merits. The Court will denied the motion.

## IV.   Discussion

### A.   Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal

11

court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *See*

*Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme

Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them."

*Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established

law" are to be determined solely by resort to Supreme Court rulings, the decisions of

lower federal courts may be instructive in assessing the reasonableness of a state court's

resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing

Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp.

2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption

only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

**B.    Prosecutorial Misconduct Claim**

12

In his first claim, Lyons argues that the prosecutor's misconduct denied him a fair trial.  Respondent argues that these claims are procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the decision of the Michigan Court of Appeals (which, despite finding many of the claims not properly preserved, nevertheless, denied them on the merits) "'was so lacking in justification that there was an error well understood an comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

13

The Michigan Court of Appeals denied all Lyons' prosecutorial misconduct claims with limited discussion, finding, "[t]he prosecutor's questions were not improper and his comments were supported by the evidence." *Lyons*, 2001 WL 699976 at *1. Though the state court's decision on this issue lacked substantial explanation, the decision is still owed deference under the AEDPA. *Harrington*, 131 S. Ct. at 784.

First, Lyons argues that the prosecutor committed misconduct by referring in opening statement to Lyons as a "dope dealer" who carried "tons of cash," and was neurotic. "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.2005). However, "counsel cannot misstate evidence." *United States v. Carter*, 236 F.3d 777, 784 (6th Cir.2001). "[T]he use of . . . colorful pejoratives is not improper," so long as the pejorative used is supported by the evidence. *United States v. Fields*, 483 F.3d 313, 360-61 (5th Cir. 2007) (*quoting United States v. Shoff*, 151 F.3d 889, 893 (8th Cir. 1998). *Accord U.S. v. Temple*, No. 93-6206, 1994 WL 201876, *6 (6th Cir. May 20, 1994) (holding that prosecutor's pejorative description of defendant, by itself, did not constitute prosecutorial misconduct); *Gonzalez v. Carey*, 58 F. App'x 269, 270 (9th Cir. 2003) (holding the prosecutor's references to the petitioner as a "thug" during closing arguments was a reasonable inference based on the evidence presented at trial regarding the petitioner's alleged conduct in abducting, beating, and stabbing the victim); *U.S. v. Wheeler*, 137 F. App'x 304 310 (11th Cir. 2005) ("[U]nflattering characterizations of a defendant . . .  do

14

not require reversal if they are supported by the evidence") (internal quotation omitted); *James v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999) (denying habeas relief on a prosecutorial misconduct claim where prosecutor's opening argument referred to petitioner as "a big time, drug dealing, murdering, robbing slime").

Two prosecution witnesses testified that Lyons made a living by selling drugs. Cynthia Bates testified that Lyons kept large sums of money in a suitcase in his mother's closet. In this case, because the characterizations of Petitioner were supported by the evidence presented at trial, the state court's finding of no prosecutorial misconduct was a reasonable application of Supreme Court precedent.

Second, Lyons argues that the prosecutor improperly attempted to elicit hearsay testimony from Cynthia Bates. However, the portion of the record cited by Lyons reflects a colloquy between the prosecutor and judge outside the jury's presence. Lyons also objects to the prosecutor asking Cynthia whether she was fearful of her uncles and who typically solved family problems. The trial court sustained objections to questions about who solved family problems and how Cynthia felt about her uncles. That the objections were sustained does not, by itself, show that the prosecutor acted improperly in asking them. The prosecutor did not persist in a line of questioning ruled irrelevant by the trial court or otherwise act improperly in this regard.

Next, Lyons argues that the prosecutor improperly elicited testimony from witness David Pary that Lyons' nickname was "Easy" and that Pary had viewed "mug shots" of Lyons. The Court sees no misconduct or impropriety in eliciting testimony regarding

15

Lyons' nickname. The mug shot reference was brief, defense counsel objected immediately, and the prosecutor corrected himself, instead referring to the mug shots as photographs. While "the use of mug shots has been strongly condemned in federal trials," *Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979), it does not automatically give rise to reversible error in a habeas corpus proceeding. *Murray v. Superintendent*, 651 F.2d 451, 454-55 (6th Cir. 1981). Here, the mug shots were not admitted into evidence. The prosecutors' reference to the existence of mug shots was brief, isolated, and appeared to be an unintentional error that does not rise to the level of misconduct.

Lyons argues that the prosecutor improperly referenced Lyons' father's invocation of his right to counsel when questioned by police. Assuming for purposes of this analysis that this question was improper, it did not rise to the level of misconduct. The question did not implicate Lyons' right to be free from compelled self-incrimination, nor did it imply his guilt. The jury was instructed that the attorneys' questions were not evidence. Thus, the Michigan Court of Appeals decision that this was not misconduct was not so wholly lacking in justification as to warrant habeas relief.

Lyons claims that the prosecutor also acted improperly in questioning Venus Bates about a 1990 incident in which her 15-year-old son Christopher was beaten up. Venus testified that, in 1990, she asked Lyons what had happened to her daughter Antoinette. Later that evening, Lyons called her to ask if she knew where Christopher was. Venus responded that Christopher was supposed to be with Lyons and that Lyons had five

16

minutes to return her son.  She threatened to call police if Christopher was not returned.

Minutes later, Lyons and Christopher arrived at Venus's house.  Christopher had a black

eye and swollen lip.  Venus believed Lyons beat Christopher because Venus asked about

Antoinette.  She also testified that she delayed so long in contacting police about

Antoinette because she feared Lyons.

Lyons points to no Supreme Court case holding that testimony about threats

admitted to explain a witness's delay in coming forward violates due process and the

Court is aware of none.  Thus, the state court's decision finding no prosecutorial

misconduct regarding the threat testimony is neither contrary to Supreme Court precedent

nor an unreasonable application thereof.  Moreover, threats to a witness are relevant to

assess credibility and do not violate due process.  *See United States v. Pierson*, 121 F.3d

560, 563 (9th Cir. 1997); *see also Burton v. Renico*, 391 F.3d 764, 775 (6th Cir. 2004)

(admission of witness threats did not violate due process where they were used to explain

why witness did not report conduct to police); *Sadler v. Jabe*, 96 F.3d 1448, 1996 WL

506375, *1 (6th Cir. 1996) (testimony that defendant's father threatened witness was

relevant to witness's credibility and was properly admitted to rehabilitate her when her

motive to testify was questioned).  When evidence of a witness's fear of a defendant is

necessary to rehabilitate a witness's credibility, and there is no indication that its use is

pretextual, it may be admissible despite its potential for prejudice.  *See Gomez v. Ahitow*,

29 F.3d 1128, 1139 (7th Cir. 1994).  In this case, the delay in prosecuting Lyons was at

issue during the trial. Venus's testimony about her fear of Lyons, therefore, was relevant

17

and admissible.

Lyons next claims that the prosecutor committed misconduct in eliciting testimony from Venus Bates that Petitioner lived with her after his "kids got burned up in the fire." That testimony was elicited by defense counsel on cross-examination of Bates. Therefore, the prosecutor did not act improperly.

Lyons objects to the prosecutor asking Venus Bates about Preston Lyons' role in the drug business. In response, she stated, "[h]e would like, if Leroy [petitioner] ordered somebody to get killed or beat up -." The trial court sustained defense counsel's immediate objection. The witness volunteered this testimony. When the objection was sustained, the prosecutor did not attempt to revisit the issue. The prosecutor acted properly.

Lyons claims that the prosecutor improperly elicited testimony that Lyons was incarcerated. The prosecutor asked Lyons' father, Noble, whether he had visited Lyons in jail. Read in context, the question clearly was intended to raise the possibility that Noble's testimony was influenced by Lyons. The other two references to Lyons' being incarcerated were made when witnesses were asked to identify the defendant and they pointed to Lyons as the man seated at the defense table wearing the green uniform. These isolated references to Lyons' incarceration do not rise the level of prosecutorial misconduct.

Lyons argues that Sergeant Myles gave improper narrative testimony. The trial court objected to the nature, not content, of Myles' testimony and directed the prosecutor

18

to ask specific questions, which the prosecutor proceeded to do.  There is no misconduct in the prosecutor's handling of Myles' testimony.

Lyons next maintains that the prosecutor engaged in misconduct by charging him with felony murder (with an underlying felony of extortion or perpetration of an arson). Lyons was charged with first-degree premeditated murder and felony murder.  The defense moved for a directed verdict on both first-degree murder charges.  The trial court granted a motion for directed verdict on the felony murder charges.  In doing so, the trial court stated that whoever prepared the information charging felony murder "should have his law license revoked."  Generally, a prosecutor has broad discretion in deciding when and what to prosecute. *Bordenkircher v. Haynes,* 434 U.S. 357, 364  (1978). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense described by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in the [prosecution's] discretion." *Id.*  In this case, a magistrate judge found sufficient probable cause to bind Lyons over for trial on the felony murder charges and a different state court judge later denied a motion to quash these charges. The prosecution's failure, ultimately, to present sufficient evidence to submit these charges to the jury does not render the charging decision misconduct.

Finally, Lyons objects to several of the prosecutor's remarks in closing and rebuttal arguments.  Specifically, he objects to the prosecutor's characterization of him as a ringleader of a drug dealing enterprise, the prosecutor's statement that Lyons threatened to chop up anyone who stole from him, and the prosecutor's reference to the beating of

19

Venus Bates' son.  He claims these arguments were facts not in evidence and were an attempt to incite the passions of the jury.  In fact, as discussed above, the evidence presented at trial supported a reasonable inference that Lyons was a major player in a drug dealing operation and that he threatened to chop up anyone who took money from him.  In addition, Venus Bates testified that she believed Lyons beat up her son in response to her inquiries about her missing daughter.  A prosecutor, generally, should not "make statements calculated to incite the passion and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotations omitted).  These arguments, amply supported by the evidence, were proper.

Lyons further argues that, in closing argument, the prosecutor improperly vouched for the credibility of David Pary and for the case.  Prosecutors may not vouch for a witness's credibility or the credibility of the case.  Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).  In this case, the prosecutor simply commented on Pary's motives for testifying and the strength of the evidence presented.  He did not imply special knowledge regarding the case or invite the jury to render a

20

verdict based upon evidence other than that presented at trial.

In rebuttal, the prosecutor invited the jury to take a look at the life of Leroy Lyons. This statement was a direct response to defense counsel's argument "that this case is about the life of Leroy Lyons."  The prosecutor proceeded in rebuttal to focus on the testimony presented at trial.  He did not invite the jury to convict Lyons based upon anything other than the evidence presented.  Therefore, the state court's decision that the prosecutor's conduct was proper is a reasonable one.

The Court denies habeas relief on Petitioner's prosecutorial misconduct claims.

C.      **Sufficiency of the Evidence**

Petitioner argues that insufficient evidence was presented to sustain his

convictions.  He argues that the prosecutor presented insufficient evidence to show that he

aided and abetted in Clark's murder and insufficient evidence to show that Bates was

killed.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review

of a sufficiency of the evidence challenge must focus on whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he

*Jackson* standard must be applied 'with explicit reference to the substantive elements of

the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary

sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.*

*Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether,

viewing the trial testimony and exhibits in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if

22

the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 597 N.W.2d 130, 135 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

The Michigan Court of Appeals denied Lyons' claims of insufficient evidence,

23

stating, in relevant part:

> [T]here was ample evidence to support the jury verdict that defendant aided and abetted in Clark's murder.  There was evidence that defendant was a drug dealer and that his brother worked for him as an "enforcer."  Also, viewed most favorably to the prosecution, the evidence permitted the jury to find that defendant said he was going to kill Clark, that he was armed with a gun, that he was present when his brother beat Clark with a bat, that he himself fired shots, that he retrieved a gun involved in the killing from a witness, and that he warned the witness not to tell anyone what had happened.
>
> The evidence that Bates was unlawfully killed was also sufficient.  The corpus delicti may be established by circumstantial evidence and the reasonable inferences drawn therefrom.  *People v. Modelski*, 164 Mich. App. 337, 341; 416 N.W.2d 708 (1987).  Here, there was evidence that Bates stole money from defendant, that defendant threatened to kill her and that she was last seen at his house.  There was also evidence that defendant's brother told a witness that Bates had been killed, that Bates had not been in contact with family or friends since Clark's murder and that there is no official record of her existence since the time of the alleged murder.  The evidence and inferences are sufficient to support the conclusion that she was killed.

*Lyons*, 2001 WL 699976 at *1-2.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. *Marshall*, 459 U.S. at 434. The Court presumes the correctness of the facts relied upon by the Michigan Court of Appeals; Lyons has not rebutted that presumption.  While the absence of Antoinette's body required the jury to rely upon circumstantial evidence, such evidence was plentiful. In addition, the evidence implicating Lyons in Clark's murder was, as set forth by the Michigan Court of Appeals, sufficient to sustain the conviction.   Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

24

### D.       Standing Trial in Prison Clothing

Lyons alleges that his right to a fair trial was violated because he stood trial wearing prison clothing.  The Michigan Court of Appeals rejected this claim, finding that Lyons did not make a timely request to wear civilian clothing, did not request extra time or assistance to procure civilian clothing, and did not take advantage of the trial court's offer to adjourn if clothing became available.  *Lyons*, 2001 WL 699976, at *2.

The United States Supreme Court has held that "a State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes ..." *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  However, the "failure to make an objection to the court as being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."  *Id.* at 512–13.  Although defense counsel raised the issue of Lyons' clothing on the first day of trial (which was comprised solely of jury selection), counsel did not raise the issue on any subsequent trial days.  Nor did counsel express any difficulty procuring civilian clothing.  The Court, therefore, finds that the Michigan Court of Appeals did not unreasonably apply *Estelle v. Williams*, in finding no constitutional violation.

### E.       Claims Four Through Eleven

Respondent argues that Petitioner's Fourth through Eleventh claims are barred from review because they are unexhausted and procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies

25

by fairly presenting the substance of each federal constitutional claim in state court.  28

U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546 (1991);

*Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  State prisoners in Michigan must

raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court

before seeking federal habeas corpus relief.  *See Manning v. Alexander*, 912 F.2d 878,

881 (6th Cir. 1990).  The petitioner bears the burden of showing that state court remedies

have been exhausted.  *Prather*, 822 F.2d at 1420, n.3.  If a petitioner "fails to present his

claims to the state courts and . . . is barred from pursuing relief there, his petition should

not be dismissed for lack of exhaustion because there are simply no remedies available

for him to exhaust."  *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).  However, a

petitioner will not be allowed to present unexhausted claims unless he can show cause to

excuse his failure to present the claims in the state courts and actual prejudice to his

defense at trial or on appeal.  *Id.*, *citing Coleman*, 501 U.S. at 750-51.

Lyons raised his fourth through ninth claims in a supplemental brief he attempted

to file in the Michigan Court of Appeals on direct review.  The brief, however, was not

filed because the Michigan Court of Appeals denied Lyons' motion to file supplemental

brief.  Lyons did not raise those claims in his application for leave to appeal to the

Michigan Supreme Court on direct review, nor did he raise them on state-court collateral

review.  Therefore, they are unexhausted.  Lyons raised his tenth and eleventh claims for

the first time in his application for leave to appeal to the Michigan Supreme Court on

direct review.  A defendant has failed to "fairly present" an issue when it is raised for the

26

first time when review is discretionary. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

An issue is not fairly presented when it is raised for the first time to the Michigan

Supreme Court, and that court declines to exercise its right to discretionary review. *See*

*Farley v. Lafler*, 193 F. App'x 543, 549 (6th Cir. 2006). Lyons did not raise these claims

on state-court collateral review. Accordingly, they too are unexhausted.

No state court remedy is available to Lyons to properly exhaust these claims

because he already has filed one motion for relief from judgment in the state trial court

and does not argue that his claims fall within the narrow exception to the prohibition

against filing successive motions for relief from judgment in state court. It is unclear

whether the petitioner asserts ineffective assistance of appellate counsel as cause to

excuse the procedural default of these claims. Assuming he does, ineffective assistance

of appellate counsel would not excuse his failure to present these claims on collateral

review in state court. *Hannah*, 49 F.3d at 1196. *See also Guilmette v. Howes*, 624 F.3d

286, 291-92 (6th Cir. 2010) (holding that a claim of ineffective assistance of appellate

counsel is properly exhausted when it is raised at the first opportunity to do so – in a post-

conviction motion for collateral relief in state court).

Thus, these claims are procedurally defaulted and barred from review unless Lyons

can establish that a constitutional error resulted in a fundamental miscarriage of justice.

*See Schlup v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851 (1995). The Supreme Court

explicitly has tied the miscarriage of justice exception to procedural default to a

petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must

27

show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, these claims are procedurally barred.

### F.   Alleged Fraud on the Court

Lastly, Lyons argues that he was denied due process and equal protection when "the state engineered [his] conviction through a fraud on the court and access to the court through malfeasance." Lyons' argument in support of this claim is confusing and convoluted. He incorporates portions of many of his other habeas claims to assert, essentially, a claim that the cumulative effect of the alleged errors warrants habeas relief. The cumulative weight of alleged constitutional trial errors in a state criminal proceeding does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, habeas relief is denied on this claim.

### V.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

28

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

A certificate of appealability is **DENIED**.

Petitioner's "Motion to Modify Court's Order of August 17, 2011" [dkt. # 31]; "Motion for Leave to Make a Brief Statement Based on State's Filings" [dkt. # 33]; and "Motion for State to Disclose Its Filings of August 31, 2011" [dkt. # 32] are **DENIED**.

Petitioner's "Motion to Supplement" [dkt. #34] is **GRANTED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 23, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2012.

s/Carol A. Pinegar
Deputy Clerk